IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **IN RE: LUPRON® MARKETING AND SALES PRACTICES LITIGATION** | ) ) ) ) | **MDL NO. 1430** |
| **THIS DOCUMENT RELATES TO ALL CASES** | ) ) ) ) ) ) ) | **MASTER FILE NO. 01-CV-10861**  **Judge Richard G. Stearns** |

## <u>AFFIDAVIT OF TODD B. HILSEE ON NOTICE PROBLEMS CAUSED BY INTERVENORS' COMMUNICATIONS TO CLASS MEMBERS</u>

I, TODD B. HILSEE, have personal knowledge of the matters set forth herein, and I believe them to be true and correct. After being duly sworn under penalty of perjury, I state as follows:

1.      I am the President of Hilsoft Notifications, a company located near Philadelphia that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans. My experience includes more than 150 significant class action notice cases. I have been responsible for the design and implementation of notice in 53 countries and 36 languages. A copy of my current C.V. identifying many of the cases my staff and I have handled, while working for both defendants and plaintiffs in almost equal proportion, is attached as **Exhibit 1**.

2.      Courts have recognized me as an expert in communications with class members, including, but not limited to, the following cases and courts: *In re Holocaust Victim Assets Litigation*, No. CV-96-4849 (Swiss Banks litigation before the Federal District Court for the

Eastern District of New York); *In re Domestic Air Transportation Antitrust Litigation*, MDL 861

(before the Federal District Court for the Northern District of Georgia); *Andrews/Harper v. MCI*,

No. CV 191-175 (900 number class action before the Federal District Court for the Southern

District of Georgia); *Cox v. Shell Oil*, No. 18, 844 (polybutylene pipe litigation before the

Tennessee State Chancery Court); *In re Dow Corning Corporation*, No. 95-20512-11-AJS

(breast implant bankruptcy proceedings before the Federal Bankruptcy Court for the Eastern

District of Michigan); *Microsoft I-V Cases*, J.C.C.P. No. 4106 ("antitrust" litigation before the

California Superior Court, County of San Francisco); *Williams, et al. v. Weyerhaeuser Company*,

No. 995787 (hardboard siding litigation before the Superior Court of California, County of San

Francisco), and *Thompson v. Metropolitan Life Insurance Company*, No. 00 Civ. 5071 (HB)

(race-based pricing litigation before the Federal District Court for the Southern District of New

York).


3.      My expert testimony has been specifically allowed by federal and state courts on

the clarity and appropriateness of communications issued in connection with and during

litigation.  These cases have included: *Ting v. AT&T*, No. C-01-2969-BZ (mandatory arbitration

litigation before the Federal District Court for the Northern District of California), where I

testified at trial on the importance and clarity of communications to class members, and on the

effect of misleading information, and where Magistrate Judge Bernard Zimmerman found my

testimony persuasive.  *See* 182 F. Supp. 2d 902, 912-913, (N.D. Cal., 2002); *Gustafson v.

Bridgestone/Firestone, Inc.*, Civil No. 00-612-DRH (recall related litigation before the Federal

District Court for the Southern District of Illinois; and *In re Bridgestone/Firestone Tires

Products Liability Litigation*, MDL No. 1373 (before the Federal District Court for the Southern

District of Indiana), wherein I testified on the effect of communications to putative class members by statements issued to the media; *Kalhammer v. First USA,* No. C96-45632010-CAL, (before the Superior Court of California), and *Navarro-Rice v. First USA,* No. 9709-06901, (before the Circuit Court of Oregon, and *Gaynoe v. First Union Corporation*, No. 97-CVS-16536, (before the Superior Court of North Carolina), wherein I testified on the effect of marketing communications to customers; and *Harp v. Qwest Communications*, No. 0110-10986, (arbitration litigation before the Circuit Court of Oregon).  By way of example, in *Harp,* Judge Jerome E. Lebarre, noted in his June 21, 2002 Order.:

> *"So, this agreement is not calculated to communicate to plaintiffs any offer.  And in this regard I accept the expert testimony conclusions of Mr. Todd Hilsee.  Plaintiffs submitted an expert affidavit of Mr. Hilsee dated May 23 of this year, and Mr. Hilsee opines that the User Guide was deceptive and that there were many alternatives available to clearly communicate these matters..."*

4.      I have been heavily involved in class notice content, and my testimony on the content of effective class notices, which serve to properly communicate information to class members, has been always accepted, as documented in numerous judicial comments in my c.v. attached as Exhibit 1.  By way of example, Judge Harold Baer, Jr., in *Thompson v. Metropolitan Life Insurance Company*, No. 00 Civ. 5071 (HB) (in the Federal District Court for the Southern District of New York), stated in his Order of September 3, 2002:

> *"The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members.  In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law."*

AFFIDAVIT OF TODD B. HILSEE ON NOTICE PROBLEMS CAUSED BY INTERVENORS'
COMMUNICATIONS TO CLASS MEMBERS

5.      Among academic and legal commentators, I was the only notice expert invited to testify before the Advisory Committee on Civil Rules of the Judicial Conference of the United States during the comment period on proposed amendments to Federal Rule of Civil Procedure 23, calling for "concise, clear, 'plain language' notices." I was subsequently asked by the Federal Judicial Center to collaborate with them to write and design illustrative "model" forms of notices to exemplify the satisfaction of the plain language requirement.  They now post these illustrative notices at www.fjc.gov.  At the January 22, 2002 hearing in Washington, D.C. for the Advisory Committee to hear comments on the Rule 23 amendments, I testified that notices must reach class members, come to their attention, and be understood by them.  Advisory Committee member Judge Lee H. Rosenthal, commented during my testimony:

> *"I want to tell you how much we collectively appreciate your working with the Federal Judicial Center to improve the quality of the model notices that they're developing.  That's a tremendous contribution and we appreciate that very much...You raised three points that are criteria for good noticing, and I was interested in your thoughts on how the rule itself that we've proposed could better support the creation of those or the insistence on those kinds of notices..."*

6.      My staff and I designed, and we are currently implementing, the comprehensive notice plan that this Court approved, in order to carefully provide neutral informational notices to class members in *In Re: Lupron® Marketing and Sales Practices Litigation*, MDL No. 1430.

7.      The notice plan approved by this Court calls for exhaustive individual notice as well as nationwide publication notice efforts, the release of public service radio announcements, the issuance of a neutral press release seeking credible news coverage, the posting of court

approved notices to other Lupron related websites seeking assistance in disseminating the

approved notices by credible third party support groups, the establishment of a neutral website

www.lupronclaims.com, and a toll free phone number.


8.      We also designed and drafted notice documents for each aspect of the plan to the

highest state-of-the-art communications standards for class action notices, conforming to the

Fed. R. Civ. Proc. 23(c)(2) requirement for "clear, concise, plain language notices."  The notices

we designed utilize techniques to achieve "noticeability" and readership as endorsed by the FJC

in our 'models' which they display at www.fjc.gov.  The MDL notice content is deliberately and

vigorously neutral—also consistent with our FJC models—which is very important in class

action notice situations.  All of the notices were submitted for Court approval, and are being

implemented accordingly.


9.      In this case, I have studied the website hosted by Intervenors,

www.lupronlaw.com, and studied the email and mailed letters sent on or about December 15

2004, and December 29, 2004, as well as pleadings and motions submitted in connection with

the issues arising out of these communications in the MDL, and notice related motions in *Stetser*

*v. TAP Pharmaceutical Products, Inc.*, et al.; C.A. No.: 1-CV-5268.


10.      I am of the opinion, to a reasonable degree of certainty, based on my experience

as a class action notice and communications expert, that Intervenors have interfered with this

Court's notice program and they are sowing confusion by issuing misleading and false email and

postal mail letters, and publishing on the internet misleading and inaccurate statements.

11.     These efforts undertaken by Intervenors could be:

a)   Keeping overall claims rates down by diverting persons who find the
lupronlaw.com website (or any of at least seven (7) identical websites) and
receive a one-sided and inaccurate portrayal of the settlement;[1] and

b)   Generating exclusion requests that may otherwise not have been submitted by
people who, on their own reading of the Court's balanced notice, would have
been allowed to properly exercise their option to decide whether to exclude
themselves on their own.

12.     In all of my more than 150 major class action notice cases I have never seen such
deceptive communications issued during an official and proper class notification.  Several
examples undertaken by Intervenors in this instance include:

a)   Sending mail and email notices to Class members, which have not been
authorized by any Court, and that are misleading and one-sided, for example: they
devote only two sentences to the decertification of the North Carolina nationwide
class and the implications of the decertification; do not mention that there are no
benefits available in the North Carolina case; how these lawyers will seek to get
benefits for them; how non-North Carolinians can benefit from signing up with
lawyers who simultaneously inform them that the case only can involve North
Carolinians, to name but a few of the problems;

---

[1] The following sites appear to be "mirrors" of lupronlaw.com, as visited on January 19, 2005:
lupronlawyer.com, lupronlawsuit.com, lupronlawyers.com, lupronclassaction.com, luproncase.com,
lupronsettlement.com, and meyersbrands.com

AFFIDAVIT OF TODD B. HILSEE ON NOTICE PROBLEMS CAUSED BY INTERVENORS'
COMMUNICATIONS TO CLASS MEMBERS

b) Proliferating websites that provide misleading statements about the MDL settlement as detailed in the settling parties papers, yet barely mention the Court's MDL website and deliberately provide no prominent and clickable link to the MDL Court's website, www.lupronclaims.com, to at least give readers a fair and convenient opportunity to learn both sides of the issue; and

c) Posting only the draft form of the MDL notice proposed with the preliminary settlement approval papers (that necessarily showed placeholders for important dates and phone numbers), instead of a finalized notice with key actual dates and the actual toll free phone number, seemingly to deliberately make calling the Court's administrator and acting on rights difficult for class members.

13. In all of my experience, the only other case I experienced where such one-sided communications were attempted during, or to interfere with, what was to be an official notification was by the Intervenors in *Stetser v. TAP* in North Carolina, where the plaintiffs' notice plan called for a press release and website, together with a publication notice plan.[2] The press release and website content were not neutral, and in my opinion gave no balanced view of the issues, especially in light of the fact that no ruling by that Court had been made on the merits. The pattern of confusion and misinformation created by the Intervenors in the MDL case is therefore a continuation of the actions they took in state court proceedings.

---

[2] Notice evidence I have studied in the Lupron matters has me further concerned that Intervenors are not interested in actually communicating effectively with class members at all. For example in *Stetser*, after we proved that the plaintiffs/Intervenors original proposed notice would reach only some 30-40% of class members (in some states as low as 24%, and in many counties of numerous states no notice coverage at all) it was improved by negotiation with the parties by incorporating some of our enhancements. The notice plan in *Stetser* still employed notices that were smaller, less frequent, and in fewer publications, relative to the Courts notice plan in the MDL which reaches far more people than even that final enacted *Stetser* plan. The Stetser plan also used no radio announcements unlike the MDL notice plan, and relied on "free" publications with no documented readership statistics, and reported inflated website visitation statistics to the court, *via* flawed notice planning methodology.

14.     In my experience, notices and other communications that are part of court-approved notice plans, or that will be directed to defined Class members in different proceedings, are always approved by a court before issuance.

15.     I am concerned that we have not been able to fully effectuate the MDL Court's notice plan, which calls for notices to be mailed to plaintiffs in other Lupron cases. I believe that the list of class members who "registered" with the Intervenors should be promptly mailed a detailed MDL notice package—and, now that misleading communications have been issued—this notice should be accompanied by a concise covering letter, approved by this Court, that accurately explains in neutral plain language, the interplay between the federal MDL and the State court actions, that at the same time neutralizes the Intervenors' prior misleading communications. I also believe that any exclusion requests received by the claims administrator should be cross-checked against the Intervenors list of registrants, and if present on that list, sent another letter requesting confirmation of the request for exclusion.

16.     Based on an accurate "road-map" of legal implications or instructions for the persons on Intervenors registration list that is provided to me—e.g., for a) North Carolina residents who remain in the MDL; b) North Carolina residents who opt-out of the MDL; c) non-North Carolina residents who remain in the MDL; d) non-North Carolina residents who opt-out of the MDL; as well as e) North Carolina and non-North Carolina residents who remain in or opt-out of the MDL, but who signed retention agreements with Intervenors counsel—I will, if

requested, draft and propose an appropriate covering letter in plain easily understood language, to be sent with the Notice package to the Intervenors list upon Court approval.

17.     In my view from a clarity of communications perspective, the lupronlaw.com website and all its mirrors should be completely removed, or redirected to the settlement website www.lupronclaims.com.  I believe this is appropriate, because the content is not vigorously neutral, fair, or balanced, or linked to the MDL settlement website, and because the people potentially most interested in reading the content at that site are in fact class members defined in the MDL, and they are directly affected by the actual words of the notices in the MDL case as posted at the MDL's settlement website.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Todd B. Hilsee

SUBSCRIBED AND SWORN TO BEFORE ME this 21st day of January, 2005.

NOTARY PUBLIC

MY COMMISSION EXPIRES:

7 - 16 - 2010

Edward M. Fitzgerald
Notary Public
My Commission Expires July 16, 2010

© 2005 Hilsoft Notifications

AFFIDAVIT OF TODD B. HILSEE ON NOTICE PROBLEMS CAUSED BY INTERVENORS'
COMMUNICATIONS TO CLASS MEMBERS

# EXHIBIT 1

Exhibit 1

# Hilsoft Notifications

*Philadelphia Area Office: 123 East Broad Street, Souderton, PA 18964, (215) 721-2120, (215) 721-6886 fax, hilsee@hilsoft.com*

*Nation's leading expert firm for large-scale, unbiased, full service class action and bankruptcy bar date notice plan design, implementation, and analysis ❖ Unique recognition by Federal and State Courts ❖ Innovated standards now followed for method and form of notice ❖ Cited in the first significant reported decision on use of media audience data to establish the "net reach" of unknown class members – now a cornerstone of methodology for adequacy of notice ❖ More than 150 cases, placing media notices in 53 countries and 36 languages ❖ Court-approved notice plans have withstood challenge to U.S. Supreme Court ❖ Only notice expert invited to testify before the Advisory Committee on Civil Rules on 2001 amendments to Fed. R. Civ. Proc. 23 ❖ Asked by Federal Judicial Center to write and design the 'model' plain language notices now at www.fjc.gov ❖ First notice expert recognized in Canada under the Ontario Class Proceedings Act of 1992 ❖ Team has worked as neutral experts for both defendants and plaintiffs ❖ Case examples include:*

- National settlement notice to 25 million policyholders in the largest race-based pricing case, *Thompson v. Metropolitan Life*, No. 00-Civ.5071 (HB)(U.S. Dist. Ct. N.Y.).  See 216 F.R.D. 55, 62-68 (S.D.N.Y., 2003)

- Worldwide notice in the $1.25 billion settlement *In re Holocaust Victims Assets*, "Swiss Banks," No. CV-96-4849 (E.D. N.Y.). Designed & implemented all U.S. and international media notice in 500+ publications in 40 countries and 27 languages. Called the most complex notice program in history.

- National settlement notice to 40 million Blockbuster renters *Scott v. Blockbuster*, No. D 162-535 (D. Tex, 136th Jud. District).  Notice withstood collateral review. *Peters v. Blockbuster, Inc.* 65 S.W.3d 295, 307(Tex. App.-Beaumont, 2001).

- Multi-national claims bar date notice *In re The Babcock & Wilcox Co.*, No. 00-10992 (Bankr. E.D. La.) to asbestos personal injury claimants.  Set standards for asbestos-related bankruptcies, i.e., W.R. Grace & USG.

- National class certification notice program to non-OEM parts recipients *Avery v. State Farm*, No. 97-L-114  (Cir. Ct. Ill.), withstood challenges to Illinois Supreme Court and U.S. Supreme Court.  Notice re-affirmed on further challenge. *Avery v. State Farm*, 321 Ill. App. 3d 269 (5th Dist. 2001).

- National settlement notice *In re Synthroid Marketing*, MDL 1182 (N.D. Ill.).  Notice withstood appellate challenge. *In re Synthroid Marketing Litigation* 264 F.3d 712, 716 (C.A.7 (Ill.), 2001).

- Written and live testimony on notice in *Spitzfaden v. Dow Corning*, No. 92-2589, (Civ. Dist. Ct., La.), the first breast implant class action to go to trial.  Notice withstood challenge to Louisiana Supreme Court.

- *In re Dow Corning Corp.*, No. 95-20512-11-AJS (Bankr. E.D. Mich.). Designed global breast implant U.S. and foreign media plans, ensuring that millions of additional women received effective notice of the bar date.

- National settlement notice plan approved, citing our notice expertise in *Cox v. Shell Oil*, "Polybutylene Pipe" 1995 WL 775363, 6 (Tenn.Ch.,1995).  Notice evidence cited when collateral attack rejected. *Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.* 356 S.C. 644, 663, 591 S.E.2d 611, 621 (S.C., 2004)

- National settlement notice, *Williams v. Weyerhaeuser Co.*, No. 995787, "Hardboard Siding Litigation" (Sup. Ct. Cal.).  Notice withstood appellate challenge. *Williams v. Weyerhaeuser Co.*, 2002 WL 373578, at 10 (Cal. App. 1 Dist.).

- Other significant notice cases: *Ting v. AT&T, Cooper Tire Settlement, Firestone MDL Litigation, Microsoft Antitrust Litigation, Canadian Fen/Phen Litigation, Pittsburgh Corning Asbestos-related bankruptcy, Factor Concentrate (HIV) Settlement,* and many others.

## KEY STAFF

*Todd B. Hilsee, President* - Mr. Hilsee is the leading expert in class action notice planning, implementation, and analysis. He has been uniquely recognized by Federal and State Courts as an expert on notice, including the first significant reported decision, *In re Domestic Air Transportation Antitrust Litigation*, 141 F.R.D. 534 (N.D. Ga.), on the use of media audience data to quantify the "net reach" of unknown class members – now a cornerstone of the methodology to determine the adequacy of notice.  His expertise includes major national and international cases include the Swiss Banks settlement, the Babcock & Wilcox and other asbestos-related mass-tort bankruptcies, the Domestic Air Transportation Antitrust Litigation, the Cox Polybutylene Pipe Litigation, Blockbuster's Extended Viewing Fee Litigation, numerous Microsoft Antitrust settlements, the global Dow Corning breast implant-related bankruptcy, State Farm's Auto Parts Litigation, the Synthroid Marketing Litigation, Firestone's and Cooper Tire's layer adhesion cases and the historic MetLife race-based pricing settlement, among many others.

Exhibit 1

Hilsoft Notifications' court-approved notice plans have withstood appellate challenges, including to the United States Supreme Court.  In January 2002, he was the only notice expert invited to testify before the Advisory Committee on Civil Rules of the Judicial Conference of the United States about the proposed "plain language" amendment to Rule 23, and subsequently was asked to write and design the illustrative 'model' plain language notices in collaboration with the Federal Judicial Center, which are now posted at www.fjc.gov.  Todd has published numerous articles on notice and due process and he was the first notice expert recognized in Canada under the Ontario Class Proceedings Act of 1992.  As a communications professional, Hilsee spent the majority of his advertising career with Foote, Cone & Belding, the largest U.S. domestic advertising firm, where he was awarded the American Marketing Association's award for effectiveness.  ❖ He received his B.S. in Marketing from the Pennsylvania State University.

*Barbara A. Coyle, Executive Vice President* - Ms. Coyle provides over 21 years of professional experience in the field of advertising media planning, negotiating, placement and analysis.  She has handled millions of dollars of media assignments in international media vehicles. ❖ Her consumer notification experience includes: the multinational Dow Corning Bankruptcy, State Farm Auto Parts Litigation, Swiss Banks Settlement, the International Commission on Holocaust Era Insurance Claims, the German Slave and Forced Labour Fund, the Austria National Fund, the International Organization for Migration, the Synthroid Marketing Litigation, the multinational Babcock & Wilcox Asbestos-related bankruptcy, the 900 Number Litigation as to MCI, and many others. Her focus has been on extending the value of media budgets through skillful negotiating. ❖ Barbara is a Cum Laude graduate of Temple University in Philadelphia, with a B.A. in Journalism, where she also received the Carlisle Award for Journalism.

*Gina M. Intrepido, Vice President, Media Director* - Ms. Intrepido has over 13 years of media planning and buying experience.  She began her career in New York at one of Madison Avenue's leading firms, BBDO Worldwide, preparing the sophisticated media planning studies for major national consumer advertising accounts and brands such as Gillette, GE Appliances, Lever Brothers, HBO and others.  ❖ Gina has planned numerous judicially approved notice plans including the Blockbuster EVF Settlement, Cooper Tire Settlement, the Microsoft I-V Cases antitrust litigation for California (mirroring the U.S. Justice Department's case), and many others including the Weyerhaeuser Hardboard Siding claims campaign which involved a creative and efficient use of radio selected through a detailed claims/population cross tabulation analysis. ❖ Gina earned a B.A. in Advertising from the Pennsylvania State University, graduating with the highest honors.

*Shannon R. Wheatman Ph.D., Notice Director* - Ms. Wheatman joined Hilsoft Notifications after serving in the Research Division of the Federal Judicial Center in Washington, DC. While at the FJC she worked with the Civil Rules Advisory Committee on the effects of *Amchem/Ortiz* on the filing of Federal class actions and conducted a survey of over 700 class action attorneys on the impact of those two cases on choice of federal or state forum in class action litigation. Shannon also played an integral part in the development of model notices at the behest of the Committee to satisfy the plain language notice amendment to Rule 23. Shannon has researched issues for the Bankruptcy Committee on reappointments and the administration of bankruptcy court caseloads. ❖ Shannon has a Ph.D. in Social Psychology from the University of Georgia and a Masters in Legal Studies from the University of Nebraska-Lincoln. Shannon has studied legal research and writing, torts, mass communication law, evidence, constitutional law, civil procedure, and law and medicine.  In 2000, she received first place in a professional research writing competition from the American Society for Trial Consultants for her research on comprehension of jury instructions in an insanity defense trial.

## JUDICIAL COMMENTS

Judge Lee Rosenthal, *Advisory Committee on Civil Rules of the Judicial Conference of the United States* (January 22, 2002), addressing Mr. Hilsee in public hearing on proposed changes to Rule 23:

> *"I want to tell you how much we collectively appreciate your working with the Federal Judicial Center to improve the quality of the model notices that they're developing.  That's a tremendous contribution and we appreciate that very much...You raised three points that are criteria for good noticing, and I was interested in your thoughts on how the rule itself that we've proposed could better support the creation of those or the insistence on those kinds of notices..."*

Judge Marvin Shoob, *In re Domestic Air Transp. Antitrust Litigation,* (January 10, 1992) 141 F.R.D. 534, 548 (N.D. Ga.):

> *"The Court finds Mr. Hilsee's testimony to be credible.  Mr. Hilsee's experience is in the advertising industry.  It is his job to determine the best way to reach the most people.  Mr. Hilsee answered all questions in a forthright and*

Exhibit 1

clear manner.  Mr. Hilsee performed additional research prior to the evidentiary hearing in response to certain questions that were put to him by defendants at his deposition...The Court believes that Mr. Hilsee further enhanced his credibility when he deferred responding to the defendant's deposition questions at a time when he did not have the responsive data available and instead utilized the research facilities normally used in his industry to provide the requested information."

Judge John Speroni, *Avery v. State Farm,* (February 25, 1998) No. 97-L-114, "Auto Parts Litigation" (Cir. Ct. Ill.) (Withstood challenge to Illinois Supreme Court, and the United States Supreme Court denied certiorari on issues including the notice issues):

"this Court having carefully considered all of the submissions, and reviewed their basis, finds Mr. Hilsee's testimony to be credible.  Mr. Hilsee carefully and conservatively testified to the reach of the Plaintiffs' proposed Notice Plan, supporting the reach numbers with verifiable data on publication readership, demographics and the effect that overlap of published notice would have on the reach figures...This Court's opinion as to Mr. Hilsee's credibility, and the scientific basis of his opinions is bolstered by the findings of other judges that Mr. Hilsee's testimony is credible."

Judge Marina Corodemus, *Talalai v. Cooper Tire & Rubber Co.,* (October 29, 2001) No. L-8830-00 MT (Sup. Ct. N.J.):

"I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life...it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear."

Judge Richard G. Stearns, *In re Lupron® Marketing and Sales Practice Litigation*, MDL 1430, No. 01-CV-10861-RGS (D. Mass.)

" I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected."

Judge Michael Maloan, *Cox v. Shell Oil,* (November 17, 1995) No. WL 775363, "Polybutylene Pipe Litigation" (Chanc. Ct. Tenn.):

"Cox Class Counsel and the notice providers worked with Todd B. Hilsee, an experienced class action notice consultant, to design a class notice program of unprecedented reach, scope, and effectiveness.  Mr. Hilsee was accepted by the Court as a qualified class notice expert....He testified at the Fairness Hearing, and his affidavit was also considered by the Court, as to the operation and outcome of this program."

*In re Synthroid Marketing Litigation*, 264 F.3d 712, 716 (C.A.7 (Ill.), 2001):

'Although officially in the game, the objectors have not presented any objection to the settlement that was not convincingly addressed by the district court. The objectors contend that the settlement should have been larger, that the notice was not sufficient, and that the release of liabilities is too broad.'

Judge Marina Corodemus, *Talalai v. Cooper Tire & Rubber Co.,* (October 30, 2001) No. MID-L-8839-00 MT (Sup. Ct. N.J.):

"The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process.  The parties have retained Todd Hilsee, president of Hilsoft Notification, who has extensive experience designing similar notice programs...The form of the notice is reasonably calculated to apprise class members of their rights.  The notice program is specifically designed to reach a substantial percentage of the putative settlement class members."

Exhibit 1

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (April 1, 2001) J.C.C.P. No. CJC-00-004106 (Sup. Ct. Cal.):

> "concerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that."

*Williams v. Weyerhaeuser Co.,* No. 995787, 2002 WL 373578, at 10 (Cal. App. 1 Dist.):

> "The hybrid notice given here--a combination of individual notice and notice by publication--was, as the trial court found, the best practicable method under the circumstances. The mass media campaign in this case appears to have been far more extensive than that approved in *Dunk, supra, 48 Cal.App.4th at pp. 1800, 1805, 56 Cal.Rptr.2d 483.* Objectors' own experience indicates the campaign was effective. Three of them received individual notices, two learned of the settlement through advertisements, and the others apparently learned of the settlement when one of them went around the neighborhood and told his neighbors about the settlement."

**Judge Yada T. Magee,** *Spitzfaden v. Dow Corning,* (March 17, 1997) No. 92-2589, "Breast Implant Litigation" (Civ. Dist. Ct., La.) (The Louisiana Supreme Court upheld the ruling, finding no error):

> "Given the definition of this class and the potential size, the efforts taken to notify potential class members was more than sweeping...Accordingly the Court finds that the notice was adequate."

**Judge Marvin Shoob,** *In re Domestic Air Transp. Antitrust Litigation,* (January 10, 1992) 141 F.R.D. 534, 555 (N.D. Ga.):

> "The Court is convinced that the innovative notice program designed by plaintiffs not only comports with due process and is sensitive to defendants' res judicata rights, but it is the only notice program suitable for this unique and massive consumer class action."

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation,* MDL 1430, No. 01-CV-10861-RGS (D. Mass.)

> "After review of the proposed Notice Plan designed by Hilsoft Notifications...is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process."

**Judge Carter Holly,** *Richison v. American Cemwood Corp,* (November 18, 2003) No. 005532 (Sup. Ct. Cal.):

> "The parties undertook an extensive notice campaign designed by a nationally recognized class action notice expert. See generally, Affidavit of Todd B. Hilsee on Completion of Additional Settlement Notice Plan."

*Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.* 356 S.C. 644, 663, 591 S.E.2d 611, 621 (S.C., 2004)

> "Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference."

Exhibit 1

**Judge Dudley Bowen,** *Andrews/Harper v. MCI,* (August 18, 1995) No. CV 191-185, "900 Number Class Action" (S.D. Ga.):

> "*Upon consideration of the submissions of counsel and the testimony adduced at the hearing, and upon the findings, observations and conclusions expressed from the bench into the record at the conclusion of the hearing, it is hereby ordered that the aforementioned proposed media plan is approved.*"

**Judge Salvatore F. Cozza,** *Delay v. Hurd Millwork Company,* (September 11, 1998) No. 97-2-07371-0 (Sup. Ct. Wash.):

> "*I'm very impressed by the notice plan which has been put together here. It seems to be very much a state of the art proposal in terms of notifying class members. It appears to clearly be a very good alternative for notification. The target audience seems to be identified very well, and the Court is very satisfied with the choice of media which has been selected to accomplish this.*"

**Judge James S. Moody, Jr.,** *Mantzouris v. Scarritt Motor Group Inc.* (August 10, 2004) No. 8:03 CV 0015-T-30 MSS (M.D. Fla.):

> "*Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.*"

**Judge Richard J. Shroeder,** *St. John v. American Home Products Corp.* (August 2, 1999) No. 97-2-06368-4 (Sup. Ct. Wash.):

> "*the Court considered the oral argument of counsel together with the documents filed herein, including the Affidavit of Todd B. Hilsee on Notice Plan…The Court finds that plaintiffs' proposed Notice Plan is appropriate and is the best notice practicable under the circumstances by which to apprise absent class members of the pendency of the above-captioned Class Action and their rights respecting that action.*"

**Judge Carter Holly,** *Richison v. American Cemwood Corp,* (November 18, 2003) No. 005532 (Sup. Ct. Cal.):

> "*As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options.*"

**Judge David Flinn,** *Westman v. Rogers Family Funeral Home,* (March 5, 2001) No. C 98-03165 (Sup. Ct. Cal.):

> "*The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*"

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (March 30, 2001) J.C.C.P. No. 4106 (Sup. Ct. Cal.):

> "*Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition. The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The Court further finds*"

Exhibit 1

*that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements."*

**Magistrate Judge Bernard Zimmerman,** *Ting v. AT&T,* (January 15, 2002) 182 F. Supp. 2d 902, 912-913, "Arbitration Litigation" (N.D. Cal., 2002) (Hilsee had testified on the importance of wording and notice design features):

*"The phrase 'Important Information' is increasingly associated with junk mail or solicitations...From the perspective of affecting a person's legal rights, the most effective communication is generally one that is direct and specific."*

**Judge Robert E. Payne,** *Fisher v. Virginia Electric and Power Company,* (July 1, 2004) No. 3:02CV431 (E.D. Va.):

*"The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently."*

**Judge Jerome E. Lebarre,** *Harp v. Qwest Communications,* (June 21, 2002) No. 0110-10986, "Arbitration Litigation" (Mult. Cty Cir. Ct. Ore.):

*'So, this agreement is not calculated to communicate to plaintiffs any offer. And in this regard I accept the expert testimony conclusions of Mr. Todd Hilsee. Plaintiffs submitted an expert affidavit of Mr. Hilsee dated May 23 of this year, and Mr. Hilsee opines that the User Guide was deceptive and that there were many alternatives available to clearly communicate these matters...'*

**Judge Carter Holly,** *Richison v. American Cemwood Corp,* (November 18, 2003) No. 005532 (Sup. Ct. Cal.):

*"The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860."*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (September 13, 2002) No. L-008830.00 (Sup. Ct. N.J.):

*'Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed...throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups...Mr. Hilsee designed the notification plan for the proposed settlement in accordance with this court's November 1, 2001 Order. Mr. Hilsee is president of Hilsoft Notifications and is well versed in implementing and analyzing the effectiveness of settlement notice plans.'*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Insurance Company,* (September 3, 2002) No. 00 Civ. 5071 (HB) (S.D.N.Y., 2003):

*'The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil*

Exhibit 1

*Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.'*

**Judge Dewey C. Whitenton,** *Ervin v. M.G.A., Inc.,* (November 22, 2002) No. 13007 (Chanc. Ct. Tenn.):

*'The content of the class notice also satisfied all due process standards and state law requirements... The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.'*

**Judge Edgar E. Bayley,** *Dimitrios v. CVS, Inc.,* No. 99-6209; *Walker v. Rite Aid Corporation,* No. 99-6210; and *Myers v. Rite Aid Corporation,* No. 01-2771, (November 27, 2002) (Common Pleas Ct. Pa.):

*'The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.'*

**Judge Robert E. Payne,** *Fisher v. Virginia Electric and Power Company,* (July 1, 2004) No. 3:02CV431 (E.D. Va.):

*"The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job...So I don't believe we could have had any more effective notice."*

**Judge James D. Arnold,** *Cotten v. Ferman Management Services Corp.,* (November 26, 2003) No. 02-08115 (13th Cir. Ct. Fla.):

*"Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement..."*

**Judge Judith K. Fitzgerald,** *In re Pittsburgh Corning Corporation,* (November 26, 2003) No. 00-22876-JKF (Bankr. W.D. Pa.):

*"The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure."*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Insurance Company,* (April 29, 2003) 216 F.R.D. 55, 68 (S.D.N.Y., 2003)

*"The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted... who would be covered by the settlement..."*

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corporation,* (June 13, 2003) No. 3-98-MDL-1227, (M.D. Tenn.):

*'Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.'*

Exhibit 1

**Judge Louis J. Farina,** *Soders v. General Motors Corp.,* (October 31, 2003) No. CI-00-04255, (Ct. of Common Pleas Pa.):

> "In this instance, Plaintiff has solicited the opinion of a notice expert who has provided the Court with extensive information explaining and supporting the Plaintiff's notice plan...After balancing the factors laid out in Rule 1712(a), I find that Plaintiff's publication method is the method most reasonably calculated to inform the class members of the pending action."

**Judge Dewey C. Whitenton,** *Ervin v. M.G.A., Inc.,* (November 22, 2002) No. 13007 (Chanc. Ct. Tenn.):

> 'Based on the evidence submitted and based on the opinions of Todd Hilsee, a well-recognized expert on the distribution of class notices... MGA and class counsel have taken substantial and extraordinary efforts to ensure that as many class members as practicable received notice about the settlement. As demonstrated by the affidavit of Todd Hilsee, the effectiveness of the notice campaign and the very high level of penetration to the settlement class were truly remarkable... The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.'

**Judge Louis J. Farina,** *Soders v. General Motors Corp.,* (October 31, 2003) No. CI-00-04255, (Ct. of Common Pleas Pa.):

> "Plaintiff provided extensive information regarding the reach of their proposed plan. Their notice expert, Todd Hilsee, opined that their plan will reach 84.8% of the class members. Defendant provided the Court with no information regarding the potential reach of their proposed plan...There is no doubt that some class members will remain unaware of the litigation, however, on balance, the Plaintiff's plan is likely to reach as many class members as the Defendant's plan at less than half the cost. As such, I approve the Plaintiff's publication based plan."

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Insurance Company,* (April 29, 2003) 216 F.R.D. 55, 68 (S.D.N.Y., 2003):

> "the notice campaign that defendant agreed to undertake was extensive...I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable".

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2, (Sup. Ct. Cal.):

> "The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard."

**Judge Fred Biery,** *McManus v. Fleetwood Enterprises, Inc.,* (September 30, 2003) No. SA-99-CA-464-FB, (W.D. Tex.):

> "Based upon the uncontroverted showing Class Counsel have submitted to the Court, the Court finds that the settling parties undertook a thorough notice campaign designed by Todd Hilsee of Hilsoft Notifications, a nationally-recognized expert in this specialized field... The Court finds and concludes that the Notice Program as designed and implemented provided the best practicable notice to the members of the Class, and satisfied the requirements of due process."

Exhibit 1

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Insurance Company*, (April 29, 2003) 216 F.R.D. 55, 62 (S.D. N.Y.):

> "In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement."

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery*, (April 14, 2004) No. 809869-2, (Sup. Ct. Cal.):

> "The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances."

**Judge Carter Holly,** *Richison v. American Cemwood Corp,* (November 18, 2003) No. 005532 (Sup. Ct. Cal.):

> "Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice."

**Judge James T. Genovese,** *West v. G&H Seed Company*, (May 27, 2003) No. 99-C-4984-A, (27th Jud. Dist. Ct. La.):

> "The court finds that, considering the testimony of Mr. Hilsee, the nature of this particular case, and the certifications that this court rendered in its original judgment which have been affirmed by the – for the most part, affirmed by the appellate courts, the court finds Mr. Hilsee to be quite knowledgeable in his field and certainly familiar with these types of cases...the notice has to be one that is practicable under the circumstances. The notice provided and prepared by Mr. Hilsee accomplishes that purpose..."

**Judge Milton Gunn Shuffield,** *Scott v. Blockbuster Inc.,* (January 22, 2002) No. D 162-535 (Jud. Dist. Ct. Tex.) (Ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001)):

> "In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained. Todd Hilsee of that firm prepared and oversaw the notification plan. The record reflects that Mr. Hilsee is very experienced in the area of notification in class action settlements...This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections...The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice."

**Judge Elaine Bucklo,** *In re Synthroid Marketing Litigation*, (August 14, 1998) No. 97-C-6017 MDL 1182 (N.D. Ill.) (Ultimately withstood challenge to 7th Circuit Court of Appeals):

> "the parties undertook an elaborate notice program...in numerous publications in the United States and abroad which those persons most likely to be class members would read...In fact from the affidavits filed, it would appear that notice was designed to reach most of the affected reading public."

**Judge Robert E. Payne,** *Fisher v. Virginia Electric and Power Company,* (February 12, 2004) No. 3:02cv431 (E.D. Va.):

> "The expert, Todd B. Hilsee, is found to be reliable and credible."

Exhibit 1

**Judge Sarah S. Vance,** *In re The Babcock & Wilcox Co.,* (August 25, 2000) No. 00-0558 (E.D. La.):

> "Furthermore, the Committee has not rebutted the affidavit of Todd Hilsee, President of Hilsoft Notifications, that the (debtor's notice) plan's reach and frequency methodology is consistent with other asbestos-related notice programs, mass tort bankruptcies, and other significant notice programs...After reviewing debtor's Notice Plan, and the objections raised to it, the Court finds that the plan is reasonably calculated to apprise unknown claimants of their rights and meets the due process requirements set forth in Mullane...Accordingly, the Notice Plan is approved."

**Mr. Justice Cumming,** *Wilson v. Servier,* (September 13, 2000) No. 98-CV-158832, "National Fen/Phen Litigation" (Ontario Superior Court of Justice):

> "a class-notification expert, Mr. Todd Hilsee, to provide advice and to design an appropriate class action notice plan for this proceeding. Mr. Hilsee's credentials and expertise are impressive. The defendants accepted him as an expert witness. Mr. Hilsee provided evidence through an extensive report by way of affidavit, upon which he had been cross-examined. His report meets the criteria for admissibility as expert evidence. R. v. Lavallee, [1990] 1 S.C.R. 852."

**Judge Alfred G. Chiantelli,** *Williams v. Weyerhaeuser,* (December 22, 2000) No. 995787, "Hardboard Siding Litigation" (Sup. Ct. Cal.):

> "The Class Notice complied with this Court's Order, was the best practicable notice, and comports with due process...Based upon the uncontroverted proof Class Counsel have submitted to the Court, the Court finds that the settling parties undertook an extensive notice campaign designed by Todd Hilsee of Hilsoft Notifications, a nationally recognized expert in this specialized field."

**Mr. Justice Cullity,** *Parsons/Currie v. McDonald's Restaurants of Canada,* (January 13, 2004) 2004 WL 40841 (Ont. S.C.J.), 2004 Carswell Ont. 76, 45 C.P.C. (5th) 304, [2004] O.J. No.83

> "I found Mr. Hilsee's criticisms of the notice plan in Boland to be far more convincing than Mr. Pines' attempts during cross-examination and in his affidavit to justify his failure to conduct a reach and frequency analysis of McDonald's Canadian customers. I find it impossible to avoid a conclusion that, to the extent that the notice plan he provided related to Canadian customers, it had not received more than a perfunctory attention from him. The fact that the information provided to the court was inaccurate and misleading and that no attempt was made to advise the court after the circulation error had been discovered might possibly be disregarded if the dissemination of the notice fell within an acceptable range of reasonableness. On the basis of Mr. Hilsee's evidence, as well as the standards applied in class proceedings in this court, I am not able to accept that it did."

**Honorable Susan Illston, United States District Judge** (N.D. Cal.), on Hilsoft Notifications presentation at the ABA's 7th Annual National institute on Class Actions, October 24, 2003, San Francisco, CA.

> 'The notice program that was proposed here today, I mean, it's breathtaking. That someone should have thought that clearly about how an effective notice would get out. I've never seen anything like that proposed in practice...I thought the program was excellent. The techniques available for giving a notification is something that everyone should know about '

Exhibit 1

## OTHER COMMENTS

**Geoffrey P. Miller, Max Greenberg Professor at Law, NYU,** testified at the *Scott v. Blockbuster* Fairness Hearing on December 10-11, 2001, before Judge Milton Shuffield:

> *"I really have never seen in the many years I've been looking at class actions, a notice campaign in a consumer case that was done with this much care and this much real forethought and imagination. It's very difficult to reach 40 million people, and I can't imagine doing a better job than as what was done in this case."*

**Arthur R. Miller, Bruce Bromley Professor of Law, Harvard Law School,** in a letter addressed to Mr. Hilsee dated June 2, 2004:

> *"I read your piece on <u>Mullane</u> with great interest and am delighted to learn the details. Indeed, I will probably incorporate some of it in my teaching next fall. I think your analysis is rock solid."*

## PUBLICATIONS

"<u>Do you really want me to know my rights?</u>" *ABA Continuing Legal Education Publication on Class Actions*, American Bar Association, 2004. ❖ "<u>Plain Language is not enough</u>," *Federal Trade Commission, Protecting Consumer Interests in Class Actions* 9/13/04; *Louisiana Bar Association 5th Annual Class Action/ Mass Tort Symposium* 10/22/04 ❖ "<u>Notice Provisions in S. 1751 Raise Significant Communications Problems</u>," *BNA Class Action Litigation Report (5 CLASS 30, 1/9/04).* ❖ "<u>So You Think Your Notice Program Is Acceptable? Beware: It Could Be Rejected</u>," *ABA Continuing Legal Education Publication on Class Actions*, American Bar Association, 2003, N03CACT ❖ <u>Contributing author (Chapter 8, Class Action Notice)</u>, *California Class Actions Practice and Procedure*, LexisNexis Matthew Bender, 2003, Library of Congress ISBN 0-8205-5357-3 ❖ "<u>Creating the Federal Judicial Center's New Illustrative "Model" Plain Language Class Action Notices</u>," co-author, *ABA Class Actions & Derivatives Suits*, Spring 2003 ❖ "<u>The Federal Judicial Center's Model Plain Language Class Action Notices: A new Tool for Practitioners and the Judiciary</u>," *BNA Class Action Litigation Report (4 CLASS 182, 3/14/03).* ❖ "<u>Class Action Notice – How, Why, When And Where the Due Process Rubber Meets The Road</u>," *Louisiana Bar Association 3rd Annual Class Action/Mass Tort Symposium*, 10/25/02 ❖ "<u>Class Actions Against Microsoft – Notice</u>," co-author, *ABA Class Actions & Derivative Suits*, Winter 2002 ❖ "<u>Communications Analysis of Third Circuit Ruling in MDL 1014: Guidance on the Adequacy of Notice</u>," *BNA Class Action Litigation Report (2 CLASS 172, 10/12/01; ABA Class Actions & Derivative Suits*, Winter 2002 ❖ "<u>Off of the Back Pages. The evolution of Class Action Notice: A practical communications perspective sheds the guiding light on adequacy of notice. An analysis of notice in Mullane v. Central Hanover Trust</u>," *Mealey's Judges and Lawyers in Complex Litigation Conference Handbook*, 11/99 ❖ "<u>Class Action Notice to Diet-Drug Takers: A Scientific Approach</u>," *Fen-Phen Litigation Strategist*, 2/99 ❖ "<u>Class Action: The Role of the Media Expert</u>," *Automotive Litigation Reporter*, 12/19/95; *Asbestos Litigation Reporter*, 12/15/95; *Medical Devices Reporter*, 12/11/95; *Asbestos Property Reporter*, 12/7/95; *Toxic Chemicals Litigation Reporter*, 12/5/95; *Securities and Commodities Litigation Reporter*, 1/1/96; *DES Litigation Reporter*, 12/95; *Employment Litigation Reporter*, 11/28/95; *AIDS Litigation Reporter*, 5/24/96; *Leveraged Buyouts & Acquisitions Litigation Reporter*, 7/96; *Wrongful Discharge Report*, 7/96; *Sexual Harassment Litigation Reporter*, 7/96; *Corporate Officers and Directors Liability Litigation Reporter*, 6/19/96

## PANELS AND SPEAKING

Speaker, "Will the Settlement Survive Notice and Associated Due Process Concerns?" *Louisiana Bar Association, 5th Annual Class Action/ Mass Tort Symposium 2004.* ❖ Speaker, "Let's Talk-The Ethical and Practical Issues of Communicating with Members of a Class," *ABA 8th Annual National Institute on Class Actions 2004.* ❖ Speaker,

Exhibit 1

"Clear Notices, Claims Administration and Market Makers," *Federal Trade Commission, Protecting Consumer interests in Class Action Workshop 2004.* ❖ Speaker, "I've Noticed You've Settled – Or Have You," *ABA's 7th Annual National Institute on Class Actions, 2003* ❖ Speaker, "Class Action Notice – How, Why, When And Where the Due Process Rubber Meets The Road," *3rd Annual Class Action/Mass Tort Symposium,* 2002 ❖ Witness, "Plain English Notices called for in August 2001 proposed amendments to Rule 23," *Advisory Committee on Civil Rules of the Judicial Conference of the United States,* 2002 ❖ Speaker, 'Generation X on Trial,' *ABA Section of Litigation Annual Meeting,* 2001 ❖ Speaker, 'Tires, Technology and Telecommunications,' *Class Action and Derivative Suits Committee, ABA Section of Litigation Annual Meeting,* 2001 ❖ Speaker, 'Class Actions,' *Mealey's Judges and Lawyers in Complex Litigation Conference,* 1999.

## LEGAL NOTICE CASES

Todd B. Hilsee and Hilsoft Notifications have served as notice experts for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| *In re Domestic Air Transp. Antitrust Litigation* | N.D. Ga., CV-2485, MDL No. 861 |
| *In Re Bolar Pharmaceutical Generic Drugs Consumer Litigation* | E.D. Pa., MDL No. 849 |
| *In re Steel Drums Antitrust Litigation* | S.D. Ohio, C-1-91-208 |
| *In re Steel Pails Antitrust Litigation* | S.D. Ohio, C-1-91-213 |
| *In re GM Truck Fuel Tank Products Liability Litigation* | E.D. Pa., 92-6450, MDL No. 1112 |
| *In re Estate of Ferdinand Marcos (Human Rights Litigation)* | D. Hawaii, MDL No. 840 |
| *Andrews v. MCI (900 Number Litigation)* | S.D. Ga., CV 191-175 |
| *Harper v. MCI (900 Number Litigation)* | S.D. Ga., CV 192-134 |
| *Kellerman v. MCI Telecommunications Corp (Long Distance Telephone Litigation)* | Cir. Ct. Ill., 82 CH 11065 |
| *In re Bausch & Lomb Contact Lens Litigation* | N.D. Ala., 94-C-1144-WW |
| *In re Ford Motor Company Vehicle Paint Litigation* | E.D. La., 95-0485, MDL No. 1063 |
| *Castano v. American Tobacco* | E.D. La., CV 94-1044 |
| *Cox v. Shell Oil (Polybutylene Pipe Litigation)* | Chanc. Ct. Tenn., 18,844 |
| *Fry v. Hoercst Celanese (Polybutylene Pipe Litigation)* | Cir. Ct. Fla., 95-6414 CA11 |
| *Meers v. Shell Oil (Polybutylene Pipe Litigation)* | Sup. Ct. Cal., M30590 |
| *In re Amino Acid Lysine Antitrust Litigation* | N.D. Ill., 95C7679, MDL No. 1083 |
| *In re Dow Corning Corp. (Breast Implant Bankruptcy)* | E.D. Mich., 95-20512-11-AJS |
| *Kunhel v. CNA Insurance Companies* | Sup. Ct. N.J., ATL-C-0184-94 |
| *In re Factor Concentrate Blood Products Litigation (Hemophiliac HIV)* | N.D. Ill., 93-C-7452, MDL No. 986 |
| *In re Ford Ignition Switch Products Liability Litigation* | D. N.J., 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Insurance Litigation)* | M.D. Ga., 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litigation)* | Cir. Ct. Cal., C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litigation)* | Cir. Ct. Ore., 9709-06901 |

Exhibit 1

| | |
|---|---|
| *Spitzfaden v. Dow Corning (Breast Implant Litigation)* | Civ. D. Ct. La., 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litigation)* | N.D. Ill., 95 C 5635 |
| *McCurdy v. Norwest Financial Alabama* | Cir. Ct. Ala., CV-95-2601 |
| *Johnson v. Norwest Financial Alabama* | Cir. Ct. Ala., CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litigation* | E.D. Pa., 94-CV-3744, MDL No. 1039 |
| *Barnes v. American Tobacco Co. Inc.* | E.D. Pa., 96-5903 |
| *Small v. Lorillard Tobacco Co. Inc.* | Sup. Ct. N.Y., 110949/96 |
| *Naef v. Masonite Corp (Hardboard Siding Litigation)* | Cir. Ct. Ala., CV-94-4033 |
| *In re Synthroid Marketing Litigation* | N.D. Ill., 97 C 6017,  MDL No. 1182 |
| *Chisolm v. Transouth Financial* | U.S. Ct. of Appeals, 4th Cir., 97-1970 |
| *Raysick v. Quaker State Slick 50 Inc.* | D. Tex., 96-12610 |
| *Castillo v. Mike Tyson (Tyson v. Holyfield Bout)* | Sup. Ct. N.Y., 114044/97 |
| *Avery v. State Farm Automobile Insurance  (Non-OEM Auto Parts Litigation)* | Cir. Ct. Ill., 97-L-114 |
| *Walls v. The American Tobacco Co. Inc.* | N.D. Okla., 97-CV-218-H |
| *Tempest v. Rainforest Café (Securities Litigation)* | D. Minn., 98-CV-608 |
| *Stewart v. Avon Products (Securities Litigation)* | E.D. Pa., 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp (Securities Litigation)* | D. Md., PJM 95-3461 |
| *Delay v. Hurd Millwork (Building Products Litigation)* | Sup. Ct. Wash., 97-2-07371-0 |
| *Gutterman  v. American Airlines (Frequent Flyer Litigation)* | Cir. Ct. Ill., 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)* | Sup. Ct. Cal., 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litigation* | E.D. Pa., 97-CV-4182, MDL No. 1244 |
| *In re Silicone Gel Breast Implant Products Liability Litigation, Altrichter v. INAMED* | N.D. Ala., CV-92-D-1000-S, MDL No. 926,CV 97-R-11441-S |
| *St. John v. American Home Products Corp.  (Fen/Phen Litigation)* | Sup. Ct. Wash., 97-2-06368 |
| *Crane v. Hackett Associates (Securities Litigation)* | E.D. Pa., 98-5504 |
| *In re Holocaust Victims Assets Litigation (Swiss Banks Litigation)* | E.D. N.Y., CV-96-4849 |
| *McCall v. John Hancock (Settlement Death Benefits)* | Cir. Ct. N.M., No. CV-2000-2818 |
| *Williams v. Weyerhaeuser (Hardboard Siding Litigation)* | Sup. Ct. Cal., CV-995787 |
| *Kapustin v. YBM Magnex International Inc. (Securities Litigation)* | E.D. Pa., 98-CV-6599 |
| *Leff v. YBM Magnex International Inc. (Securities Litigation)* | E.D. Pa., 95-CV-89 |
| *Crawley v. Chrysler Corporation (Airbag Litigation)* | Common Pleas Ct. Pa., CV-4900 |
| *In re PRK/LASIK Consumer Litigation* | Sup. Ct. Cal., CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., 1:98CV51-D-D |
| *Scott v. American Tobacco Co. Inc.* | Civ. D. Ct. La., 96-8461 |

Exhibit 1

| | |
|---|---|
| *Jacobs v. Winthrop Financial Associates (Securities Litigation)* | D. Mass., 99-CV-11363 |
| *International Commission on Holocaust Era Insurance Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litigation)* | Cir. Ct. Ala., CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litigation)* | E.D. Pa., Civil No. 00-87 |
| *Mangone v. First USA Bank (Credit Card Litigation)* | Cir. Ct. Ill., 99AR672a |
| *In re Babcock and Wilcox Company (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litigation)* | Sup. Ct. Wash., 00201756-6 |
| *Brown v. American Tobacco* | Sup. Ct. Cal. J.C.C.P. 4042 No. 711400 |
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litigation)* | Ontario. Sup. Ct., 98-CV-158832 |
| *Paul and Strode v. Country Mutual Insurance Company (Non-OEM Auto Parts Litigation)* | Cir. Ct. Ill., 99-L-995 |
| *In re Texaco Inc. (Bankruptcy)* | Bankr. S.D. N.Y.  Nos. 87 B 20142, 87 B 20143, 87 B 20144. |
| *Olinde v. Texaco (Oil Lease Litigation)* | Bankr. M.D. La., No. 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litigation)* | S.D. Ill., Civil No. 00-612-DRH |
| *In re Bridgestone/Firestone Tires Products Liability Litigation* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corporation (Credit Card Litigation)* | Sup. Ct. N.C., No. 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corporation (Fuel O-Rings Litigation)* | W.D. Tenn., No. 99-2896 TU A |
| *Providian Credit Card Cases* | Sup. Ct. Cal., J.C.C.P. No. 4085 |
| *Fields v. Great Spring Waters of America, Inc. (Bottled Water Litigation)* | Sup. Ct. Cal., No. 302774 |
| *Sanders v. Great Spring Waters of America, Inc. (Bottled Water Litigation)* | Sup. Ct. Cal., No. 303549 |
| *Sims v. Allstate Insurance Co. (Diminished Auto Value Litigation)* | Cir. Ct. Ill., No. 99-L-393A |
| *Peterson v. State Farm Mutual Automobile Insurance Co. (Diminished Auto Value Litigation)* | Cir. Ct. Ill. No. 99-L-394A |
| *Microsoft I-V Cases (Antitrust Litigation Mirroring Justice Dept.)* | Sup. Ct. Cal., J.C.C.P. No. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litigation)* | Sup. Ct. Cal., No. C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Cir. Ct. Ill., No. 97-L-20 |
| *Garrett v. Hurley State Bank (Credit Card Litigation)* | Cir. Ct. Miss., No. 99-0337 |
| *Ragoonanan v. Imperial Tobacco Limited (Firesafe Cigarette Litigation)* | Ontario Sup. Ct., No. 00-CV-183165 CP |
| *Dietschi v. American Home Products Corp. (PPA Litigation)* | W.D. Wash., No. C01-0306L |
| *Dimitrios v. CVS, Inc. (PA Act 6 Litigation)* | Common Pleas Ct. Pa., No. 99-6209 Civil |
| *Jones v. Hewlett-Packard Company (Inkjet Cartridge Litigation)* | Sup. Ct. Cal., No. 302887 |
| *In re Tobacco Cases II (California Tobacco Litigation)* | Sup. Ct. Cal., J.C.C.P. No. 4042 |
| *Scott v. Blockbuster, Inc (Extended Viewing Fees Litigation)* | D. Tex., Jefferson Cty, 136th Jud. District, No. D 162-535 |