IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |
|---|---|
| IN RE: LUPRON® MARKETING AND SALES PRACTICES LITIGATION | ) ) ) ) |
|  | MASTER FILE: No. 01-CV-10861 (MDL 1430) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) ) |

**MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA DIRECTED TO MDL PLAINTIFFS' COUNSEL THOMAS M. SOBOL AND IN OPPOSITION TO INTERVENORS' EMERGENCY MOTION TO COMPEL AND FOR ADJOURNMENT OF THE FINAL FAIRNESS HEARING**

**INTRODUCTION**

Despite the abundant discovery and settlement material produced to Intervenors by the MDL Parties, and despite the three years Intervenors' counsel spent litigating their related state court actions against Defendants, Intervenors now seek to compel production of a broad range of documents and information related to the litigation of and confidential settlement negotiations conducted in this matter. These demands include requiring the named plaintiffs to sit for a second deposition, compelling the depositions of MDL Plaintiffs' Counsel Thomas M. Sobol and other attorneys involved in these settlement negotiations, and discovery of unaffiliated third parties. For many reasons, Intervenors' demands for discovery should be denied.

Courts have overwhelmingly held that discovery into settlement negotiations is improper unless the Intervenors are able to make a threshold showing with evidence from *other sources* that the settlement was collusive. Intervenors have proffered no such evidence. To the contrary,

this Court has already held that there is no evidence of any collusion in the negotiations of this

settlement.  Moreover, Intervenors have provided no other reasonable basis for their far-reaching

requests, and the courts have long recognized that such intrusive discovery should rarely, if ever,

be allowed.  Accordingly, the Intervenors should not be permitted the documents and

information they seek related to the settlement negotiations, nor should they be allowed to

proceed with the depositions of the named plaintiffs or attorney for the MDL Plaintiffs, Mr.

Sobol.

Similarly, Intervenors are not entitled to all of the extensive discovery obtained, reviewed

and used by MDL Class counsel because they had three years of litigation to obtain this same

information.  Finally, Intervenors' request to once again delay this settlement process also should

be denied because any delay in receiving their desired discovery is due to Intervenors' own

neglect; thus, the deadline for submission of objections to the Settlement should remain March

15, 2005 and the Final Fairness Hearing should remain as scheduled for April 13, 2005.  For

these reasons, set forth in more detail below, Intervenors' Motion to Compel should be denied in

its entirety[1] and MDL Plaintiffs' Motion to Quash the Subpoena to Thomas M. Sobol should be

granted.

## **FACTUAL BACKGROUND**

On November 17, 2004, this Court allowed Valerie Samsell's and Milton Greene's

("Intervenors") Motion to Intervene for purposes of participating in the established process for

the evaluation of the proposed settlement.  See November 17, 2004 Order on Motion to Intervene

---

[1] If the Court determines that any portion of the discovery sought by Intervenors is appropriate, the MDL Plaintiffs respectfully request that the Court issue an Order allowing them limited discovery of the Intervenors to determine their standing as class members, their damages and the basis for their objections.

("Intervention Order"), attached hereto as Exhibit 1.  The Intervention Order provides that "access to settlement documents will be decided on a request-by-request basis."  Intervenors ignored the Court's directive, waited over three months, and then issued the broad-reaching discovery requests at issue here, including interrogatory requests and requests for depositions not contemplated by the Intervention Order.

Intervenors' counsel themselves have been litigating two related cases against defendants for over three years in the state courts in North Carolina, *Stetser v. TAP Pharmaceutical Products Inc.*, et al., No. 01-CVS-5268 ("*Stetser*") and New Jersey, *Walker et al. v. Tap Pharmaceuticals Inc.*, CPM-L-682-01 ("*Walker*").  Despite the MDL Plaintiffs' Counsel's and Defendants' Counsel's requests, the state court proceedings in *Stetser* and *Walker* were never coordinated with those in the MDL.  Thus, in their own cases, Intervenors had the ability to seek any discovery they deemed appropriate, and they had the separate opportunity to participate in the MDL discovery in an efficient manner.

On November 23, 2004, the Court conducted the preliminary approval hearing. Intervenors vigorously opposed preliminary approval.  The fact that they have already participated in these settlement proceedings is highly relevant.  In most class action settlements, absent class members are unaware of the settlement until the parties disseminate notice.  Because of Intervenors' counsel's involvement in the *Stetser* and *Walker* cases, however, Intervenors received notice of the proposed settlement prior to preliminary approval and were afforded the opportunity to fully participate in the preliminary approval process.  Intervenors submitted more than one hundred pages of briefing in opposition to the preliminary approval motion.

After hearing Intervenors' arguments, on November 24, 2004, the Court issued the Order

Granting Preliminary Approval of Settlement, Certifying Class For Purposes of Settlement,

Directing Notice to the Class and Scheduling Fairness Hearing (the "Preliminary Approval

Order").  The lengthy and detailed Preliminary Approval Order duly considered the standards

applicable at this juncture and granted preliminary approval of settlement and provisionally

certified a class for settlement purposes.  As to any claims of collusion by the Intervenors, the

Court specifically held that it was

> satisfied that the negotiations in this case have been conducted at arm's length and
> that the proposed settlement is free of any hint of collusion.  Counsel involved on
> both sides of the MDL proceedings are honorable litigators devoted to the interest
> of their clients.  The case has been vigorously contested from its inception, as
> evidenced by the number of decisions that have emanated from this court and the
> Court of Appeals addressing disputes over jurisdiction, discovery, and substantive
> law.  Discovery has proceeded for three years and has involved at least two score
> depositions and the production and analysis of hundreds of thousands of pages of
> documents.  Counsel are among the most experienced lawyers the national bar has
> to offer in the prosecution and defense of significant class actions.

*See* Preliminary Approval Order at 3.

Despite the November 17, 2004 invitation by the Court to Intervenors to submit to it any

requests for documents relating to the settlement, Intervenors finally served their first request for

production of documents and interrogatories from MDL Plaintiffs[2] almost three months later on

February 3, 2005.  On February 17, 2005, less than a month from the date all objections to the

proposed settlement are due, Intervenors noticed the depositions and/or served subpoenas on ten

individuals and entities, including MDL Plaintiffs' Counsel Thomas Sobol and four of the named

plaintiffs.[3]  In addition to the subpoena that was mailed to Mr. Sobol at his office, Intervenors

served Mr. Sobol with a subpoena at his home on March 3, 2005.  In all, Intervenors' requests

---

[2] Attached as Exhibit 2.
[3] The Notices of Deposition are attached hereto as Exhibit 3.

were comprised of deposition notices and subpoenas to the following:  William Porter (named

plaintiff); Christeen T. Brickey, duly appointed personal representative of the Estate of William

A. Brickey, Jr. (named plaintiff); L. Maxine Goetting, Independent Administrator of the Estate of

Carl L. Goetting (named plaintiff); Beacon Health Plans, Inc. (named plaintiff); Thomas M.

Sobol, Esq. (MDL Plaintiffs' Counsel); Daniel E. Reidy, Esq. (counsel for defendant TAP

Pharmaceutical Products Inc.); Richard W. Cohen, Esq. (counsel for Cobalt Insurance

Company); Elizabeth K. Ainslie, Esq. (counsel for Aetna Insurance Company); Michael A. Pretl[4]

(General Counsel of the American Urological Association – unaffiliated third party); and

Southeastern Urological Center, P.A.[5] (unaffiliated their party).  Intervenors also propounded

document requests and interrogatories on the MDL Plaintiffs and Defendants and upon the

Settling Health Plans.

     In their requests, Intervenors primarily seek the production of all information and

documents relating to the settlement negotiations.  In recognition of the current time constraints,

not only have the MDL Parties produced documents, but MDL Plaintiffs served their responses

and objections to Intervenors on March 3, 2005, three days before they were due.  The MDL

Parties thus far have produced the following extensive materials to Intervenors:

### Documents and Pleadings Relating to Class Certification

- Plaintiffs' Motion for Class Certification and Memo of Law in Support and all Supporting Appendixes
- Defendants' Motion in Opposition to Class Certification and Memo of Law in Support and all Supporting Appendixes

---

[4] Mr. Pretl informed the Court in his letter dated March 7, 2005 that he has no knowledge or information helpful to the Court on the fairness of the settlement.

[5] Southeastern Urological Center, P.A. moved to quash the subpoena directed to it in the United States District Court for the Northern District of Florida, the district court from which the subpoena directed to Southeastern was issued. On March 8, 2005, Southeastern filed a Notice of Filing Motion to Quash with this Court.

- Plaintiffs' Reply in Support of Class Certification
- Plaintiffs' Motion to Strike Steven J. Young (Defendants' expert)
- Defendants' Response to Motion to Strike Steven J. Young
- Transcript of class certification hearing
- Power point presentation given by Defendants as part of oral arguments in opposition to class certification and handout material given to the Court by Plaintiffs
- North Carolina Appellate Decision decertifying the national class
- Memoranda of Understanding (for both the Class and SHPs)
- The Settlement Agreements (for both the Class and SHPs)

**Expert Reports**

- Declaration of Dr. Raymond S. Hartman (MDL Plaintiffs' expert)
- Rebuttal Declaration of Dr. Raymond S. Hartman
- Declaration of Steven J. Young (Defendants' expert) in Opposition to Plaintiffs' Motion for Class Certification
- Supplemental Declaration of Steven J. Young (in response to Hartman's rebuttal)
- Declaration of Dr. James Langenfeld (Defendants' expert)

**Depositions**

- Deposition of Dr. Raymond S. Hartman
- Deposition of Steven J. Young
- Deposition of Dr. James Langenfeld
- Deposition of Dr. Robert P. Fleischer
- Deposition of Dr. W. Courtenay Renneker
- Deposition of Dr. Hal Goldman (representative of Beacon Health Plan)
- Deposition of William F. Ecklund (30(b)(6) deposition for named plaintiff Twin Cities Bakery Workers)
- Deposition of Julie Ryberg (representative of Twin Cities Bakery Workers ("TCBW"))
- Deposition of Christeen Brickey (named plaintiff and proposed class representative)
- Deposition of Maxine Goetting (named plaintiff and proposed class representative)
- Deposition of William Porter (named plaintiff and proposed class representative)
- Excerpt of deposition of Hank Pietraszek (TAP Witness)
- Excerpt of deposition of Alan MacKenzie (TAP Witness)
- Excerpt of deposition of Don Patton (TAP Witness)
- Excerpt of deposition of Richard K. Masterson, Jr. (TAP Witness)
- Excerpt of deposition of Craig S. Maske (TAP Witness)
- List of depositions taken by the Plaintiffs in the MDL proceedings (produced by Plaintiffs)

**Other Documents**

- TAP's Sentencing Memorandum
- TAP's Criminal Judgment
- TAP's Plea Agreement
- Beacon Health Plan Pharmacy Contracts
- Beacon Health Plan Network Update (Aug. 31, 1999)
- TCBW documents labeled TCBW 0001, 0856, 0857
- Excerpt from Cobalt Complaint
- Excerpt from Aetna Complaint
- Excerpt from Blue Cross Blue Shield Complaint
- MedPAC Report

In addition, many, if not all of the same discovery documents that have been made available to the MDL Plaintiffs in this litigation have been made available to Intervenors' counsel in the *Walker* and *Stetser* cases. Intervenors were given equal access to TAP's document depository outside of Chicago and thus had access to the same 500 boxes of documents the MDL Plaintiffs had available to them, and most likely copied many of the same documents MDL Plaintiffs have in their database. Moreover, Intervenors have taken at least the same number of depositions as MDL Plaintiffs, many of them of the same witnesses taken in the MDL litigation (required because Intervenors' counsel chose not to participate in joint depositions).

On February 25, 2005, MDL Plaintiffs served upon Intervenors their Objections of Plaintiffs and Thomas Sobol to Intervenors' Notice of Deposition. In the cover letter to the objections, attorney for MDL Plaintiffs John Macoretta informed Intervenors' counsel that neither the named plaintiffs nor Mr. Sobol would be appearing for their depositions because Intervenors were not permitted to conduct discovery of this nature without prior Court approval. MDL Plaintiffs also made objections on a number of grounds including, but not limited to, the deposition notices and subpoenas were overbroad, unduly burdensome, harassing, and sought

7

testimony that is protected by the attorney-client and work product privilege and is neither

relevant to this action nor likely to lead to the discovery of admissible evidence.  On March 1st,

Mr. Macoretta spoke with Intervenors' counsel, TerriAnne Benedetto and Donald E. Haviland,

and counsel for TAP, Irene Fiorentinos and discussed MDL Parties' objections in further detail.

On March 2, 2005, Mr. Macoretta contacted Intervenors' counsel, indicating that MDL Plaintiffs

would respond to the written discovery requests by March 3, 2005, three days prior to when they

were due, and that neither the named plaintiffs nor Mr. Sobol would be produced for deposition.

See March 2, 2005 Letter from Mr. Macoretta, attached to Motion to Quash Subpoena Directed

to MDL Plaintiffs' Counsel Thomas M. Sobol, filed contemporaneously herewith, as Exhibit B.

## ARGUMENT

## I.       INTERVENORS ARE NOT ENTITLED TO THE DISCOVERY THEY SEEK

The discovery rights of Intervenors are far more limited than those of ordinary parties to

a litigation.  Contrary to their attestations, Intervenors do not have an absolute right to discovery

on the proposed settlement.  *Hemphill v. San Diego Assoc. of Realtors*, 225 F.R.D. 616, 619

(S.D. Cal. Jan. 3, 2005);  *In re Lorazepam & Clorazepate Antitrust  Litig.*, 205 F.D.R. 24, 25

(D.D.C. 2001); *In re Ford Motor Co. Bronco II Products Liab. Litig.*, MDL No. 991, 1994 WL

593998, *3 (E.D. La. Oct. 28, 1994)("*Bronco II*"); *In re Domestic Air Transportation Antitrust*

*Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992); 4 Alba Conte & Herbert Newberg, Newberg on

Class Actions § 11.57 (4th ed. 2002) ("4 Newberg & Conte").  This Court should limit the

discovery only "to that which may assist it in determining the fairness and adequacy of the

settlement."  *Hemphill*, 225 F.R.D. at 619; *In re Lorazepam*, 205 F.D.R. at 25; *Bronco II*, 1994

WL 593998 at *3; *Domestic Air*, 144 F.R.D. at  424; 4 Newberg & Conte § 11.57.   Discovery is

only permitted to the extent it allows objectors "meaningful participation in the fairness hearing without unduly burdening the parties or causing an unnecessary delay." *Domestic Air*, 144 F.R.D. at 424; *Bronco II*, 1994 WL 593998 at *3.

The factors the Court must consider when determining whether Inervenors should be allowed discovery include (1) the nature and amount of previous discovery; (2) the reasonable basis for the evidentiary requests; and (3) the number and interests of objectors.[6] *Domestic Air*, 144 F.R.D. at 424; *see also Hemphill*, 225 F.R.D. at 620.  Each counsel for denial of the broad discovery Intervenors seek.

## A.      There Has Been Significant Prior Discovery.

As to the first factor, it is well established that if significant discovery has already been taken, and particularly if such discovery was produced to objecting class members, "independent discovery should generally not be allowed." *Bronco II*, 1994 WL 593998 at *3 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2nd Cir. 1974), *overruled on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2nd Cir.(N.Y.) Mar 28, 2000)).

There is no question that the MDL Parties have developed an extensive record in this litigation, since its inception, and that there has been substantial discovery conducted in an adversarial setting.  *See* Preliminary Approval Order, at 3.  Hundreds of thousands of pages of documents have been produced and many of depositions have been taken.  Indeed, the Intervenors counsel have themselves reviewed those documents and taken depositions of many of the same witnesses.  The MDL parties willingly have produced the wealth of documents listed above, including the transcripts of each of the named plaintiffs' depositions, to Intervenors.

These pleadings, expert reports, documents and deposition transcripts alone provide the

Intervenors and the Court with more than sufficient information to assist them in making a

determination on the fairness of the settlement.  The production by the MDL parties, in addition

to the significant overlapping discovery obtained by Intervenors' counsel from the three years

they spent litigating the *Walker* and *Stetser* cases, counsels against allowing any further

discovery, and particularly against allowing the depositions of Plaintiffs' Counsel[7] and requiring

each of the named plaintiffs to sit for their deposition for a second time.  Permitting further

discovery in light of the abundance of information and documents Intervenors have received and

had or have available to them, would unduly burden the Plaintiffs and delay the final settlement

of this action.  As shown below, Intervenors provide no reasonable basis for the discovery they

seek.

   **B.**     **Intervenors Have Failed To Establish A Reasonable Basis For Their
              Requests.**

   None of the Intervenors' purported bases for the requested discovery are sufficient to

justify the intrusive and far-reaching discovery they seek.  *See e.g., Hemphill*, 225 F.R.D. at 622.

   The Intervenors have failed to show the material they have is inadequate for them to

evaluate the settlement.  To be entitled to discovery, Intervenors must make a clear and specific

showing that the Court lacks vital information for its fairness determination.  *Bronco II*, 1994

WL 593998 at *4; see also Manual for Complex Litigation (Fourth), §21.643 at 419 (2004) ("A

court should monitor postsettlement discovery by objectors and limit it to providing objectors

---

[6] MDL Plaintiffs cannot address the number and interest of objectors at this juncture because objections to the settlement are not due until March 15, 2005, prior to the filing date of this brief.

[7] The procurement of testimony from counsel is generally disfavored.  *See Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003).   See further discussion, *infra*.

with information central to the fairness of the proposed settlement"). This they have utterly failed to do.

**1.     Intervenors Have No Right To Discovery Relating To The Settlement Negotiations Because They Have Failed to Produce Any Evidence of Collusion.**

Intervenors seek not only documents related to the parties' settlement negotiations, but to depose attorneys for the negotiating parties, the named plaintiffs, and third-parties regarding the settlement discussions. Intervenors seek this discovery in the hope of turning up some evidence of collusion. Such discovery is improper. The case law is clear and unequivocal that discovery into negotiations of the proposed settlement should not be permitted unless there is some independent evidence of collusion between the parties in the negotiating process. *Mars Steel Corp. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987); see also *Hemphill*, 225 F.R.D. at 620 (citing *Lobatz v. US West Cellular*, 222 F.3d 1142, 1148 (9th Cir. 2000)); *Bowling v. Pfizer*, 143 F.R.D. 141, 146 (S.D. Ohio 1992); *Domestic Air*, 144 F.R.D. at 424; *Bronco II*, 1994 WL 593998 at *4. There are strong policy reasons for not permitting this kind of broad discovery into confidential settlement negotiations. Allowance of such discovery, "particularly the depositions of negotiators, . . . would have an obvious chilling effect on the desire to settle cases. This type of discovery carries a great risk of exposing legal strategy and attorney client privileged communications." *Smith v. Sprint Communications Co.*, Civ. No. 99-3844, 2003 WL 715748, *2 (N.D. Ill. Feb. 27, 2003)(denying intervenors discovery of face to face negotiation meetings, settlement agreement drafts, and depositions of key settlement negotiators because no foundation was laid presenting evidence from other sources that the settlement was collusive).

In *Hemphill*, objectors to a class action settlement sought wide-ranging discovery relating to the settlement negotiations, including documents within Class Counsel's files relating to the information on which the settlement was based, expert reports and communications between class counsel and experts, and transcripts of depositions taken in the case. *Hemphill*, 225 F.R.D. at 622. The court determined that the objectors were not entitled to such discovery because they failed to produce any evidence from other sources that the settlement was a product of collusion. *Id.* The court also concluded that the documents sought by the objectors were not necessary to provide the district judge with information sufficient to determine whether the settlement agreement was fair, reasonable or adequate. *Id.* at 624.

Intervenors' assertion of collusion is without any basis or merit. As this Court has found, there is no evidence in the record of any collusion. Preliminary Approval Order at 3. The Intervenors have not adduced any. Thus, the discovery demands should not go forward.

### 2.     The Discovery Demands Seek Privileged or Duplicative Information

In addition, as noted above, the First Circuit has held that a deposition of an attorney should not be allowed except under exceptional circumstances. *See Bogosian*, 323 F.3d at 66. There can be no question that the chilling affect feared by the *Smith* court would result if such depositions on settlement processes are easily permitted. Further, other than the most perfunctory information, all of the information asked of Mr. Sobol would be privileged and work-product doctrine protected. There is no valid reason to ask for such discovery and no reason to allow it.

Similarly, the second depositions of the plaintiffs need not be taken. The very large majority of them will be duplicative (and the transcripts of the first depositions have been

produced), any information provided to them by MDL Counsel about the settlement is privileged, and despite Intervenors' attempt to make much of a change in the class definition, it does not mean the plaintiffs are not class members and adequate class representatives.

The purpose of Intervenors' document and deposition discovery, and the only possible purpose of the MDL Counsel's depositions, is to obtain information pertaining to the confidential settlement negotiations conducted here.  The case law overwhelmingly prohibits such discovery. *See Smith*, 2003 WL 715748 at *2.  Thus, given the extensive discovery already taken in this case and the fact that there is not even a hint of collusion, none of the demanded discovery should be allowed.

> **3.    The Generalized Purported Need for Discovery on the Settlement Does Not Support the Demands.**

Intervenors claim they need such broad discovery into the settlement negotiations because (1) they must know the extent of the discovery conducted in this case; (2) they need to know the likelihood of Plaintiffs' success if the case had been tried; and (3) they want to know whether the consumers' interest were sacrificed in favor of the insurance companies. Intervenors' Memorandum in Support of Motion to Compel ("Intervenors' Memo.") at 6-8.

Information on the discovery conducted by the MDL Plaintiffs is already known to Intervenors' counsel.  Indeed, they have (or could have had) much of it.  In addition, information relating to the extent of discovery conducted in this case and the likelihood of success if this case were tried will be provided in MDL Plaintiffs' papers in support of final approval of the settlement.  In all events, Intervenors fail to explain how the need for this information justifies production of documents relating to settlement negotiations or why the existing evidence Intervenors currently possess does not provide the sought-after information.

13

Apparently, the Intervenors only intend to claim that they could have negotiated a better settlement.  This cannot be the basis for obtaining the sought-after discovery because it is well-established that disagreements about the merits of a settlement "cannot be the basis for a ruling permitting discovery of settlement negotiations, or discovery would be available in virtually every proposed class settlement to which there is an objection."  *Smith*, 2003 WL 715748 at *2.

Finally, Intervenors' claim that they need the requested depositions and documents because they must know whether the consumers' interest were sacrificed in favor of the insurance companies also must fail.  This rationale assumes an allegation of collusion, which the Court has already found against, and as set forth above, Intervenors have not made the requisite showing to justify the requested discovery.

### 4.     Intervenors' Contention That The Release May Be Too Broad Does Not Justify The Discovery They Seek.

Intervenors seek to take broad discovery of the MDL Parties' attorneys, class members and third parties (Michael Pretl and Southeastern Urological Center, P.A.) and all evidence related to the settlement negotiations purportedly to determine whether there is any "recurring abuse"[8] involved with the settling parties "releasing claims against parties who did not contribute

---

[8] As Intervenors correctly point out, there is potential for abuse in class action settlements.  However, the Court must also be careful to consider the motives of objectors.  As the Manual for Complex Litigation cautions:

> Some objections, however, are made for improper purposes, and benefit only the objectors and their attorneys. . . .  An objection, even of little merit, can be costly and significantly delay implementation of a class settlement. . . . Objections may be motivated by self-interest rather than a desire to win significant improvements in the class settlement.  A challenge for the judge is to distinguish between meritorious objections and those advanced for improper purposes.

Manual for Complex Litigation (Fourth),  §21.643 at 418 (2004).

to the class settlement."[9]  Intervenors' Memo. at 8.  This is puzzling.  The proposed settlement

resolves the claims at issue in this litigation.  How anything can "recur" is a mystery.  If this is

another allegation of collusion, it is unsupported in the record and not the proper subject of

discovery.  Moreover, questions about the breadth of the release in the Settlement Agreement

provide no basis for the depositions and discovery Intervenors seek here.

The First Circuit has already held that Intervenors' argument that class members' claims

are being unfairly compromised because the settlement agreement releases "claims against

parties who did not contribute to the class settlement," is "easily dispensed with."  *City*

*Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1044 (1st Cir. 1996).  In

*City Partnership*, the First Circuit, confronted with intervenors seeking to overturn the district

court's approval of a settlement because the plaintiff released claims that it did not raise in its

complaint, held it is:

> well-settled that in order to achieve a comprehensive settlement that would
> prevent relitigation of settled questions at the core of a class action, a court may
> permit the release of a claim based on the identical factual predicate as that
> underlying the claims in the settled class action even though the claim was not
> presented and might not have been presentable in the class action.

*Id.*; *see also Masterson v. Pergament*, 203 F.2d 315, 330 (6th Cir. 1953)(general rule is that the

release of noncontributing defendants is no reason for disapproving a compromise); *In re Lloyd's*

*American Trust Fund Litig.*, Civ. No. 96-1262, 2002 WL 31663577, *11 (S.D.N.Y. Nov. 26,

2002) (claims against the non-party could be released where claims based on the same

underlying factual predicate as the claims asserted against parties to the action being settled); *In*

---

[9] In its Motion to Quash Subpoena, third party Southeastern Urological Center, P.A. suggests that Intervenors'
counsel is using this proceeding to conduct pre-suit discovery of a lawsuit Intervenors' counsel has previously
threatened against Southeastern.  *See* Southeastern Urological Center, P.A.'s Motion to Quash Subpoena, at p. 7-8.

*re Orthopedic Bone Screw Products Liability Litig.*, 176 F.R.D. 158, 181 (E.D. Pa. 1997);

*Bowling v. Pfizer*, 143 F.R.D. 141, 154 (S.D. Ohio 1992)("Merely because the parties settled a

greater dispute than [the plaintiffs] originally envisioned does not indicate that the parties

engaged in collusion).  Indeed, it would be against sound public policy to discourage far-

reaching settlements.  *Bowling*, 143 F.R.D. at 154.

Further, any questions that the scope of the release is too broad or too narrow and how

that relates to the adequacy or reasonableness of the settlement will be addressed by the MDL

Parties, Intervenors and the Court at the Final Fairness Hearing.  Intervenors already have from

their own state court cases more than enough information about the facts underlying the claims

here.  Additional deposition testimony or discovery will not elucidate this issue.

### C.  Cases Cited By Intervenors In Support Of Their Motion Are Inapposite

The cases cited by Intervenors to permit the requested discovery are easily

distinguishable.   In *General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir.

1979), the Seventh Circuit allowed discovery into settlement negotiations because the court

found that those negotiations were carried out in direct violation of the district court's pretrial

order requiring that any negotiations take place with the permission of other class counsel in the

federal action.  *Id.* at 1126.  Even the court in *Hemphill* found that the objectors' citation to

*General Motors* did not support their request for discovery.  *Hemphill*, 225 F.R.D. 621 fn. 3.

The *Hemphill* court concluded that unlike *General Motors*, no such irregular negotiations

occurred in the case before it.  *Id.*[10]  Furthermore, the Seventh Circuit subsequently distinguished

---

[10] Similarly, the District Court for the Eastern District of Missouri found *Reynolds v. Beneficial National Bank*, 288 F. 3d 277 (7th Cir. 2002), cited by Intervenors, unpersuasive because "it appeared to be a lawyer-driven case in which the Seventh Circuit perceived the lawyers to 'place their pecuniary self-interest ahead of the class' in

*General Motors* on the grounds that the violation of the district court's order was sufficient evidence to establish the threshold requirement that the settlement may have been collusive. *Mars Steel*, 834 F.2d at 677.  Finding no indication of such similar "hanky-panky" in the case before it, the Seventh Circuit declined to find it was abuse of discretion for the district court to refuse to allow discovery into the settlement negotiations.  *Id.*  As in *Hemphill* and *Mars Steel*, Intervenors have not shown and cannot show any similar behavior here.

Similarly unpersuasive is Intervenors' reliance on *Clark v. Experian Information Solutions, Inc.*, Civ. No. 00-1217-22, 2004 WL 256433 (D.S.C. Jan. 14, 2004).  In *Clark*, the court allowed discovery after the fairness hearing only upon determining at the fairness hearing that the presentation of the evidence in support of the settlements were deficient in several respects, and therefore the court itself needed more information before it could finally determine the fairness of the settlement.  *Clark*, 2004 WL 256433 at *3.  Here, the Fairness Hearing has not occurred.  MDL Plaintiffs intend to provide the Court with more than adequate information to determine the adequacy of this settlement.

Finally, *In re Diet Drugs Products Liab. Litig.*, MDL No. 1203, 2001 WL 497313 (E.D. Pa. May 9, 2001) does not support the discovery Intervenors seek because that court did not allow for the type of prohibited evidence Intervenors seek here.  The district court, in recognition of the vast nature of the claims involved in the *Diet Drugs* litigation, proactively designed a system to deal with the potential influx of discovery requests from objectors that would inevitably appear in such a complex case.  The court specifically held that requested discovery may "not be duplicative of prior discovery including merit discovery."  *In re Diet Drugs*, Pre-

---

'derogation of their professional and fiduciary obligations.'"  *In re Bankamerica Corp. Sec. Litig.*, 210 F.R.D. 694,

Trial Order No. 1109, p. 3, attached to Inervenors' Motion to Compel ("Intervenors' Motion") at

Exhibit 15.  Likewise here, much of the discovery is entirely duplicative of the record developed

during litigation of the merits here.  Plaintiffs do not deny Inervenors are entitled to some

discovery.  They only contend that Intervenors have already received that discovery and have

more than they need to determine the fairness of the settlement.

## II.     THE DEADLINE FOR FILING OBJECTIONS AND THE FINAL FAIRNESS HEARING SHOULD NOT BE POSTPONED BECAUSE ANY DELAY IS THE RESULT OF INTERVENORS' OWN NEGLECT

Intervenors provide no justification for their eleventh hour attempt to extend the current

deadline for filing objections and the scheduled Final Fairness Hearing.  Pursuant to the

Preliminary Approval Order, the MDL Parties disseminated Notice containing the scheduled

dates to all class members months ago.  Now, Intervenors argue that they are unprepared to file

their objection papers and are unable to adequately prepare for the Fairness Hearing because of

the settling parties' "wholesale denial of discovery."  This is false.  Intervenors themselves admit

they have received substantial materials which include all class certification briefing.  See

Intervenors' Motion at ¶26.  Further, the settling parties have produced the discovery materials

listed above, including deposition transcripts of the named plaintiff depositions.  As noted above,

Intervenors have also conducted their own extensive discovery in the related *Walker* and *Stetser*

actions and had access to the same 500 boxes of documents the MDL Plaintiffs had available to

them.[11]  Intervenors also obtained deposition testimony of many, if not most, of the same

---

710 (E.D. Missouri 2002)(quoting *Reynolds*, 288 F.3d at 279.)

[11] In their document requests to the MDL Plaintiffs, Intervenors ask for "a list of all documents produced" in this action.  Plaintiffs have never maintained "list" of documents obtained and requiring them to do so would be unduly burdensome.  Plaintiffs have reviewed hundreds of thousands of  documents in discovery.  While no list has been kept, Plaintiffs maintain a database containing subjective coding of the documents received and reviewed.  Plaintiffs

witnesses that MDL Plaintiffs deposed.  Thus, it is disingenuous, to say the least, for Intervenors to claim they do not have appropriate discovery on which to base their objections to the settlement.  *See White v. National Football League*, 822 F. Supp. 1389, 1429 (D. Minn. 1993) (rejecting request to postpone final approval of the settlement agreement for purposes of permitting objectors opportunity for discovery because class members had been provided with or had available to them more than adequate information with which to analyze the settlement and objectors had no right to seek discovery concerning settlement negotiations).

As importantly, any delay in obtaining additional discovery is due to the neglect of Intervenors themselves.  Over three months ago, this Court granted Intervenors' Motion to Intervene and ordered that access to settlement documents would be determined by the Court on a request-by-request basis.  *See* Intervention Order, attached as Exhibit 1.  Ignoring this, Intervenors waited until February 3, 2005, only five weeks before the deadline for submission of objections are due, to propound the sweeping discovery they now demand.  They did not ask for the Court's consideration of their requests, and did not give themselves enough time to complete the discovery process or to avoid a delay to the settlement process.  Thus, they have known for months that they would have to proceed expeditiously.  They did not.  Further, Intervenors' contention that the MDL Parties delayed production of the class certification pleadings filed under seal is completely without merit.  The MDL Parties have always noted that they would produce those sealed pleadings as soon as the MDL Protective Order was executed by Intervenors' counsel.  If Intervenors' counsel was concerned about getting those documents in a timely manner, they would not have waited until January 25 to request the MDL Protective

---

objected to producing this database as it is protected by the attorney work product privilege.  See Responses and

Order.  *See* February 9, 2005 Letter from Ed Notargiacomo to Kent M. Williams referencing Mr.

Williams Letter of January 25, 2005, attached as Exhibit 5.

Given that Intervenors themselves were the sole cause of any delay in production of

documents, the deadline for filing objections and the date for the Final Fairness Hearing should

remain at their currently scheduled dates.

## CONCLUSION

For the foregoing reasons, MDL Plaintiffs' Motion to Quash the subpoena directed to

MDL Plaintiffs' Counsel Tomas M. Sobol should be granted and Intervenors' Motion to Compel

Discovery from Proponents of the Settlement and Third Parties and Motion for Adjournment of

the Fairness Hearing should be denied.

Dated: March 11, 2005                        Respectfully submitted,

                                             /s/ Donna F. Solen
                                             Lisa M. Mezzetti
                                             Donna F. Solen
                                             COHEN, MILSTEIN, HAUSFELD &
                                             TOLL, P.L.L.C.
                                             1100 New York Avenue, N.W.
                                             West Tower, Suite 500
                                             Washington, DC 20005-3964


                                             Joseph R. Saveri
                                             LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
                                             275 Battery Street, 30th Floor
                                             San Francisco, California 94111-3339

---

Objections of MDL Plaintiffs to Intervenors' Request for Production of Documents, attached as Exhibit 4.

David S. Stellings
LIEFF CABRASER, HEIMANN &
BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY  10017-2024

Jeffrey L. Kodroff
John A. Macoretta
SPECTOR ROSEMAN & KODROFF
1818 Market Street, Suite 2500
Philadelphia, PA 19103

**Class Plaintiffs' Co-Lead Counsel**


Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
HAGENS BERMAN SOBOL
SHAPIRO, LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**Plaintiffs' Liaison Counsel**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing (1) MDL Plaintiffs' Motion to Quash Subpoena Directed to MDL Plaintiffs' Counsel Thomas M. Sobol; (2) Memorandum in Support of MDL Plaintiffs' Motion to Quash Subpoena Directed to MDL Plaintiffs' Counsel Thomas M. Sobol and In Opposition To Intervenors' Emergency Motion To Compel And For Adjournment Of The Final Fairness Hearing; (3) Proposed Order Granting Motion to Quash Subpoena to Thomas M. Sobol; and (4) Proposed Order Denying Intervenors' Motion to Compel,  upon all counsel of record electronically pursuant to Section III of Case Management Order No. 2 and upon Intervenors' Counsel by facsimile and first class mail.

By:     /s/  Donna F. Solen
Donna F. Solen
Cohen, Milstein, Hausfeld &
   Toll, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964